Filed 2/10/15  Kaufman v. First American Title Ins. Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| WENDY KAUFMAN et al., | B248689 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC370141) |
| v. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lee Anne Edmon, Judge.  Affirmed.

Mayer Brown, Bronwyn F. Pollock, Andrew Z. Edelstein, Archis Parasharami, Kevin Ranlett; Dentons US, Ronald D. Kent, Michael Duvall and Sonia Renee Martin, for Defendants and Appellants.

The Bernheim Law Firm and Steven J. Bernheim; The Semerjian Law Firm and Nazo Sevaq Semerdjian; The Kick Law Firm and Taras Kick; Kabateck Brown & Kellner and Brian S. Kabateck, for Plaintiffs and Respondents.

Defendants, First American Title Insurance Company and First American Title Company, appeal from a May 1, 2013 order denying their motion to compel individual arbitration. At issue is whether defendants waived the right to compel individual arbitration. (Code Civ. Proc., § 1281.2, subd. (a); *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375-376; *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195-1196.) The operative complaints all seek class action relief. We affirm.

We reach three conclusions. First, we hold the judgment should be affirmed because defendants failed to fairly summarize all of the material evidence. Second, defendants have failed to provide a proper record. Third, we conclude substantial evidence supports the trial court's finding that defendants have waived the right to compel individual arbitration. In that regard, we conclude substantial evidence supports the trial court's prejudice findings. We further conclude the futility aspect of arbitral waiver jurisprudence does not permit reversal of the order denying defendants' motion to compel individual arbitration. Thus, we affirm the orders under review.

First, defendants have failed to fairly summarize all of the relevant evidence. Defendants' briefing is an incomplete, one-sided analysis of the evidence. Virtually none of the evidence of prejudice is even inferentially referred to in defendants' briefs. Under these unusual, but not unique circumstances, it is appropriate that we deem all of defendants' substantial evidence contentions forfeited. (*Foreman & Clark Corporation v. Fallon* (1971) 3 Cal.3d 875, 881; *Doe v. Roman Catholic Archbishop* (2009) 177 Cal.App.4th 209, 218.)

Second, virtually all of the documents relied upon by the trial court have not been provided by defendants in a clerk's transcript or appendix. The trial court had before it documents spanning over one-half decade of litigation including court orders and the like. The issues discussed in those documents relate directly to the merits of the litigation as well as significant disputes over the utilization of discovery devices. The burden of proving error rests with defendants. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141; *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.) Defendants' failure to

2

provide the thousands of pages of documents which were relied upon by the trial court in issuing its ruling forfeits the waiver issue. (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46; *Hernandez v. California Hosp. Med. Ctr.* (2000) 78 Cal.App.4th 498, 502.) Defendants' arguments to the contrary have no merit. Further, there is no merit to defendants' contention that perhaps some unspecified part of the record is missing. The transfer of this case from Divisions Three to Five has not resulted in the loss of a single piece of paper.

Third, the trial court's extensive waiver findings are supported by substantial evidence. We review the trial court's comprehensive waiver findings for substantial evidence. (*St. Agnes Medical Center v. PacifiCare of California*, *supra*, 31 Cal.4th at p. 1196; *Hong v. CJ CGV America Holdings, Inc.* (2013) 222 Cal.App.4th 240, 248.) Defendants cite to other inferences that can be drawn from the evidence. However, we are required to conduct substantial evidence review. Our Supreme Court has repeatedly emphasized this standard of review prohibits us from reweighing evidence and inferences. (*People v. Merriman* (2014) 60 Cal.4th 1, 100; *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398.) Additionally, defendants ask us to apply decisions of federal trial and intermediate courts where independent review has been conducted on waiver and prejudice issues. In doing so, they are requesting that we refuse to apply the applicable standard of review for waiver and prejudice issues established in the arbitral context by our Supreme Court. We are required to apply our Supreme Court's substantial evidence standard of review to the waiver and prejudice issues. (*People v. Letner* (2010) 50 Cal.4th 99, 197-198; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) And we are not required to apply decisions of federal trial and intermediate appellate courts under these circumstances. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 79, overruled in *In re Jaime P.* (2006) 40 Cal.4th 128, 139; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 507.)

The following constitutes substantial evidence supporting the trial court's waiver determination which includes its prejudice findings. The complaint in Sjobring v. First American Title Co. (case No. BC329482), brought by plaintiff, Jeffrey Albert Sjobring,

3

was filed on February 25, 2005. The complaint in Wilmot v. First American Title Insurance Co. (case No. BC370141), brought by plaintiffs, Elizabeth Wilmot and Jason Munro, was filed on April 26, 2007. For clarity's sake, we will refer to this complaint as being filed by Ms. Wilmot. The complaint in Pickett v. First American Title Insurance Company (case No. BC382826) brought by plaintiff, Jon Pickett, was filed on December 21, 2007. Later, Wendy Kaufman replaced Mr. Pickett as the plaintiff in case No. BC382826. The first time defendants indicated a desire to arbitrate the dispute was on May 26, 2011.

Nazo S. Semerdjian, one of plaintiffs' attorneys, compiled a nonexhaustive list of litigation related events in connection with Ms. Wilmot's claims. It includes extensive demurrers filed by defendants and disputes over the use of discovery devices. Mr. Semerdjian's listing consists of 530 specific events between April 26, 2007, when Ms. Wilmot's complaint was filed, and May 26, 2011. In addition, Mr. Semerdjian compiled a similar list of litigation events occurring between April 26, 2007, when Ms. Wilmot's complaint was filed, and May 26, 2011. That listing indicates there were 517 discrete litigation events that occurred during that time frame. Further, Mr. Semerdjian compiled a similar listing for events occurring in connection with Mr. Sjobring's complaint between February 25, 2005, and May 26, 2011. According to Mr. Semerdjian 1,040 litigation events occurred during that time period. And, as to Ms. Kaufman, after her complaint was originally filed by Mr. Pickett on December 21, 2007, 330 litigation events occurred.

According to the declaration of Stephen Bernheim, he had personally spent more than 6,725 hours working on the Sjobring, Wilmot and Kaufman cases. The intensity of the litigation is reflected by the fact that more than 105 court hearings were held. In addition, 11,095 hours of additional work was performed on these 3 cases by 10 other lawyers. The team of plaintiffs' lawyers opposed 12 demurrers and 8 motions to strike. In addition, a cross-complaint was filed against Mr. Sjobring. At one point, Mr. Sjobring's case was removed to federal court. Eventually, Mr. Sjobring's case was returned to the trial court. In Mr. Sjorberg's case, a summary judgment or adjudication

4

motion was filed, later withdrawn, but still resulted in time and expenses being incurred by his attorneys.

Over plaintiffs' objections, two discovery referees were appointed. Plaintiffs subsequently incurred "at least $259,000" in discovery reference fees. These costs were compounded by the fact a second discovery referee was appointed. Further, more than 10 depositions were taken on both the merits and class certification issues. According to Mr. Bernheim: Mr. Sjobring was deposed three times; Ms. Munro was deposed twice; Ms. Wilmot and Ms. Kaufman were deposed once each; and Mr. Pickett was deposed once after he withdrew as a named plaintiff in Ms. Kaufman's case. In addition, Mr. Bernheim explained: Mr. Sjobring's mortgage broker was deposed; Ms. Wilmot's real estate agent was deposed; and both the Department of Insurance and one of its employees was deposed. And, plaintiffs took more than 100 depositions during the course of the litigation before the arbitration motion was filed. Also, plaintiffs responded to 464 special interrogatories relating to both merits and class issues which resulted in hundreds of pages of responses by each of them. Moreover, plaintiffs responded to 225 document demands. Mr. Sjobring separately responded to form interrogatories and admissions requests served by defendants. More than 20 third-party subpoenas which sought more than 150 categories of documents were served by defendants. Further, plaintiffs' "consulting expert" was subpoenaed and a motion to compel his deposition was litigated. In addition, defendants filed "approximately" 10 motions to compel further responses and sanctions. All of defendants' sanctions requests were denied.

In addition, plaintiff served: 822 document demands relating to both the merits and class certification issues; 1,171 special interrogatories relating to both class certification issues and the merits; 131 form interrogatories; 145 admissions requests; and 179 first and third party deposition notices which included document production requests relating to both the merits and class issues. Plaintiffs' attorneys reviewed over 250,000 pages of documents produced by defendants. In connection with discovery disputes, plaintiffs filed approximately 53 motions to compel compliance by defendants with their discovery obligations. On 23 occasions, defendants were ordered to comply with their

5

statutorily mandated discovery obligations by the trial court. Thus, during the extraordinarily lengthy discovery phase of the litigation, there was evidence that defendants deliberately violated this state's civil discovery statutes, causing plaintiffs to incur extraordinary expenses.

In addition, Ms. Kaufman filed a class certification motion which was eventually granted but later vacated because defendants sought a litigation stay. The trial court ruled on more than one hundred applications and motions. Plaintiffs' attorneys generated and reviewed more than 5,000 pieces of correspondence between the various counsel. Hundreds of memoranda were generated and reviewed concerning the legal and factual issues relating to plaintiffs' individual and class claims. In addition, there were hundreds of in-person and telephonic meetings between the lawyers and other professionals representing plaintiffs. Mr. Sjobring also filed a class certification motion. According to Mr. Bernheim, "nearly all research and work on" Ms. Wilmot's class certification motion was completed. Her class certification motion was to be filed the day after defendants filed their motion to compel arbitration. Further, numerous status conference reports were prepared by both sides. In none of their status conference reports did defendants state an intent to arbitrate the disputes.

As of June 1, 2011, Mr. Bernheim's law firm spent more than 17,820 hours working on the Sjobring, Wilmot and Kaufman cases. Thus, through June 1, 2011, Mr. Bernheim's firm had incurred more than $10,723,000 in attorney fees. In addition, as of June 1, 2011, Mr. Bernheim's firm had incurred more than $780,000 in litigation costs. Mr. Bernheim's declaration addresses the increased costs incurred because defendants did not move at the outset of the litigation to compel arbitration. Mr. Bernheim declared that 90 per cent of litigation fees and costs incurred through June 1, 2011, would not have been incurred had defendants, at the outset, successfully sought arbitration.

Additionally, Taras Kick's law firm had incurred more than $7.5 million in attorney fees. And, Mr. Kick's law firm incurred more than $350,000 in litigation costs. Mr. Kick agreed with Mr. Bernheim's assessment that had these matters been arbitrated, 90 per cent of the costs and fees would not have been incurred.

The foregoing constitutes substantial evidence of prejudice for purposes of a waiver finding. A material part of the parties' use of discovery devices related to class issues. Defendants are seeking to compel individual arbitration. Further, the extraordinary extent of discovery-related and other events and ensuing delay was inconsistent with seeking to arbitrate. (*Roberts v. El Cajon Motors* (2011) 200 Cal.App.4th 832, 846; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1229; see *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 17-20.)

Additionally, the trial court reasonably could have concluded the arbitration provisions provided for more limited discovery than that available under California law. The "Evidence" provisions of the arbitration rules state, "The arbitrator may order reasonable discovery of evidence upon the request of a party and upon a determination that the request is reasonable and necessary for the party to prepare and present its case." Thus, under the arbitration regime, the trial court reasonably could have concluded no discovery could occur without arbitral permission. And, the trial court could further reasonably conclude greater discovery rights were available under the Civil Discovery Act. (*Emerson v. Superior Court* (1997) 16 Cal.4th 1101, 1108; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 8:23, p. 8N-1 (rev. # 1, 2014).) So it is clear, we have only set forth some of the events which support a waiver finding. We have not elucidated in detail all of the circumstances which support the trial court's well thought out and explicit waiver findings.

Similarly, defendants' futility defense has no merit. Defendants contend that any earlier motion to compel arbitration would have been futile. Defendants reason that until the opinion in *AT&T Mobility LLC v. Concepcion* (2010) 563 U.S. ___ [131 S.Ct. 1740, 1753] (*Concepcion*) was filed, any motion to compel arbitration would have been denied. According to defendants, until *Concepcion* was decided, it would have been unconscionable to order individual arbitration. Defendants rely upon the unconscionability analysis in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 153-163 (*Discover Bank*). Thus, defendants reason it would have been futile to file a motion or petition to compel arbitration before they did so. (*Iskanian v. CLS*

7

*Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 376.) Defendants' futility contention has no merit.

The parties agree that the so-called *Discover Bank* unconscionability rule was disapproved of in *Concepcion*. The *Discover Bank* rule consists of four cumulative elements when a case is subject to California law: there is a waiver of the right to pursue a class action in arbitration; the waiver is found in a consumer contract of adhesion; the waiver occurs "in a setting in which disputes between the contracting parties predictably involve small" damage amounts; and a party with superior bargaining power has carried out a "scheme to deliberately cheat large numbers of consumers out of . . . small sums of money." (*Discover Bank*, *supra*, 36 Cal.4th at pp. 162-163; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 447-448.)

Here, there is substantial evidence the *Discover Bank* rule did not render the earlier filing of a motion or petition to compel arbitration futile. There is substantial evidence these were not adhesive contracts, an essential element of the *Discover Bank* rule. Three of defendants' employees testified the contracts were not offered on a take it or leave it basis. Further, there was testimony by defendants' employees that their employers allowed for negotiation of contractual terms including the arbitration clause. Thus, there is substantial evidence an essential element of an adhesion claim, the offering of a contract on a take it or leave it basis, is not present in this case.

Further, none of the arbitration clauses forbid class arbitration. As noted, the *Discover Bank* rule applies when an arbitration clause prohibits class arbitration. Here, the arbitration clauses implicitly authorize classwide arbitration—they do not forbid it. The Title Insurance Arbitration Rules permit consolidation of claims if it will result in a more economical or efficient resolution of the dispute. And a contract signatory has a right to seek to add to the arbitration proceedings any other person who is bound by the arbitration clause. (See *Klussman v. Cross Country Bank* (2005) 134 Cal.App.4th 1283, 1299-1303.) Moreover, a First American Title Insurance Company senior vice president admitted that a fair reading of the arbitration provisions permit consolidation of all claims of signatories to arbitration agreements. Based upon substantial evidence, the trial court

8

could reasonably conclude that the arbitration provisions impliedly permit, not prohibit, classwide arbitration. (*Stolt-Nielsen S. A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 685; *Truly Nolan of America v. Superior Court, supra*, 208 Cal.App.4th at p. 513; see *Oxford Health Plans LLC v. Sutter* (2013) 569 U.S. ___, ___ [133 S.Ct. 2064, 2069-2070].)

As to the magnitude of the claims, there is substantial evidence that the disputes in the contracts at issue do not predictably involve small amounts of damages. As noted, the *Discover Bank* rule applies when damage claims are of a predictably small amount. An American Title Insurance Company senior vice president admitted that disputes between defendants and their customers do not predictably involve small amounts of money. According to the senior vice president, such policy disputes tend to be in the tens or hundreds of thousands or millions of dollars. In California, according to Mr. Semerdjian, the average claim was $230,542. The smallest California claim was $27,000. Hence, there is substantial evidence the predictably small damage element in the *Discover Bank* rule is not present. (*Lewis v. Fletcher Jones Motor Cars, Inc.*, supra, 205 Cal.App.4th at p. 447-448 [*Discover Bank* rule does not apply when damage claim was for $19,000]; *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 844-855 [potential $16,000 damage amount is outside of the *Discover Bank* predictably small damage unconscionability element].) Therefore, there is substantial evidence that it would not have been futile to file a motion or petition to compel individual arbitration at the outset of the litigation. This is because there is substantial evidence the *Discover Bank* rule did not make it futile to a file a motion or petition to compel arbitration earlier.

But, even if the *Discover Bank* rule applies, there is substantial evidence defendants continued to litigate the matter after the certiorari petition was granted in the *Concepcion* case. The certiorari petition in *Concepcion* was granted on May 24, 2010. (*AT&T Mobility v. Concepcion* (2010) 560 U.S. 923.) The parties continued to engage in substantial litigation notwithstanding the grant of certiorari. Vigorous litigation ensued in the judicial forum continued even after the *Concepcion* opinion was filed on April 27, 2011. As noted, even after the *Concepcion* opinion was filed, Mr. Bernheim's firm

9

incurred more than $987,000 in litigation fees and costs before defendants sought arbitration. Even after the *Concepcion* opinion was filed, 56 discrete litigation activities occurred during the 110-day period before defendants sought arbitration. There is substantial evidence defendants continued to resort to the judicial forum even after the *Concepcion* certiorari petition was granted and opinion was filed; all to plaintiffs' prejudice.

The orders under review are affirmed. Plaintiffs, Wendy Kaufman, Jeffrey Albert Sjobring, Elizabeth Wilmot and Jason Munro, are to recover their costs on appeal from defendants, First American Title Insurance Company and First American Title Company.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


GOODMAN, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.